UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL ACTION

VERSUS                                                           NO. 14-41

DWYANE TILLMAN                                           SECTION "R"


### ORDER AND REASONS

Dwyane A. Tillman moves for compassionate release.[1] The Government opposes the motion.[2] The Court finds that defendant has demonstrated extraordinary and compelling reasons meriting compassionate release and grants the motion.

### I.   BACKGROUND

On February 4, 2015, Tillman pleaded guilty[3] to possessing with the intent to distribute 500 grams or more of cocaine hydrochloride.[4] According to the factual basis that Tillman signed, he was arrested pursuant to a probation warrant aboard an Amtrak train on February 18, 2014.[5] Detectives questioned Tillman, and he stated that a black duffel bag belonged to him.[6] The detectives opened the

---

1   R. Doc. 68.
2   R. Doc. 71.
3   R. Doc. 4 at 2.
4   R. Doc. 6 at 1.
5   R. Doc. 25 at 1-2.
6   *Id.* at 2.

bag and discovered a white, brick-like substance that was later determined to be cocaine, weighing approximately 1,092 grams.[7] On February 12, 2016, the Court sentenced Tillman to 150 months imprisonment, to be followed by a four-year term of supervised release.[8]

Tillman represents that he suffers from several serious medical conditions: anemia, type 2 diabetes, vitamin D deficiency, hyperlipidemia, retinopathy, hypertension, and heart disease.[9] The Government submitted defendant's medical records, and they confirm these diagnoses.[10] Further, the medical records show that defendant has undergone serious procedures to treat his conditions. Defendant received left heart catheterization in December 2019 to treat his coronary artery disease.[11] In May 2020, he underwent amputation of his left fifth toe and debridement of his right first toe.[12] Defendant has continued to suffer complications related to his diabetes, has required further surgery since his amputation, and his most recent medical records indicate that he may need further amputation.[13]

In June 2020, the warden of FCI Oakdale I recommended to the Bureau of Prisons' ("BOP") Office of General Counsel that Tillman be considered for

---

[7] *Id.*
[8] R. Doc. 52 at 2-3.
[9] R. Doc. 68 at 5.
[10] R. Doc. 70-8 at 2.
[11] *Id.* at 44.
[12] *Id.* at 33.
[13] R. Doc. 74-3 at 1.

compassionate release.[14] Documents from that request state that defendant's medical condition is deteriorating, and is terminal within four years.[15] Nevertheless, the BOP's Office of General Counsel denied the request, finding that Tillman "does not meet the debilitated [reduction in sentence] criteria" because he is "generally independent" and "is not confined to his bed or chair for more than 50% of his waking hours."[16]

Tillman filed his motion for compassionate release while incarcerated at Oakdale.[17] While it was pending, the BOP transferred him to Fort Worth FMC, a medical center in Texas. On February 2, 2021, the Court issued an order requiring the Government to explain the reason for the transfer, and whether there has been any change to defendant's medical condition.[18] In response to the Court's order, the Government acknowledges that Tillman's condition has further deteriorated.[19] The Government also submitted the BOP's transfer order, according to which Tillman has developed "uncontrolled" diabetes mellitus and "severe and progressive vascular disease and lower extremities amputations," which require further treatment.[20] The transfer order states that Oakdale was inadequately

---

[14] R. Doc. 70-4 at 1-6.
[15] *Id.* at 4.
[16] R. Doc. 70-5 at 1.
[17] R. Doc. 68 at 1.
[18] R. Doc. 73.
[19] R. Doc. 74 at 3.
[20] R. Doc. 74-2 at 1, 3.

3

equipped to treat Tillman's condition because it has only a triage medical department.[21]

Defendant has a projected release date of November 9, 2024.[22] Arrested on February 18, 2014, defendant has served approximately 65% of his sentence, including credit for good time. *See* 18 U.S.C. § 3624.

## II. DISCUSSION

### A. Exhaustion

Before a federal court will assess the merits of a motion for compassionate release, a defendant must show that he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or that "30 days [have passed] from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The Fifth Circuit has clarified that "all requests for compassionate release must be presented to the Bureau of Prisons before they are litigated in the federal courts." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, No. 20-5997, 2020 WL 7132458 (U.S. Dec. 7, 2020).

In addition, the Fifth Circuit held that the exhaustion requirement is a "mandatory claim-processing rule." *Id.* Like other mandatory-claim processing rules, the Court must enforce the rule if a party properly raises the issue. *See id.*;

---

[21] *Id.* at 1.
[22] *Id.*

*see also Pierre-Paul v. Barr*, 930 F.3d 684, 692 (5th Cir. 2019) ("A claim-processing rule is mandatory to the extent a court must enforce the rule if a party properly raises it."). The Government does not contest exhaustion in this case.[23]

Dr. Richard Griffin, Clinical Director at Oakdale, made a request for compassionate release on Tillman's behalf on June 8, 2020.[24] The record reflects that Dr. Griffin submitted the request to the warden of Oakdale.[25] The warden then recommended compassionate release for Tillman to the office of the general counsel of the BOP.[26] The BOP denied the request on August 7, 2020.[27] Because Tillman's administrative request for compassionate release received a final decision by the BOP, and because the Government does not contest exhaustion, the Court proceeds to the merits of Tillman's motion.

### B. Extraordinary and Compelling Reasons

Courts may only grant compassionate release when "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i)-(ii); *see also United States v. Thompson*, No. 20-40381, 2021 WL 37493, at *1 (5th Cir. Jan. 5, 2021). The relevant policy statement is set out in § 1B1.13 of the United States Sentencing Guidelines. The commentary to §

---

[23] R. Doc. 70 at 11.
[24] R. Doc. 70-4 at 6.
[25] *Id.*
[26] R. Doc. 70-4 at 1.
[27] R. Doc. 70-6 at 1.

1B1.13 describes four "extraordinary and compelling reasons" that could warrant a reduced sentence: (1) medical conditions, (2) age, (3) family circumstances, and (4) "[o]ther [r]easons." U.S.S.G. § 1B1.13 cmt. n.1(A)-(D); *see also Thompson*, 2021 WL 37493 at *2. The commentary further specifies that, to be sufficiently serious to warrant release, a medical condition must be a "terminal illness" or a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.3 cmt. n.1(A).

As noted, prison officials at Oakdale who recommended compassionate release for Tillman stated that his condition is terminal, and his life expectancy is less than four years.[28] The warden's request also notes that his physical health is deteriorating such that it "substantially diminishes his ability to function in a correctional facility."[29] Defendant's medical records confirm the seriousness of his condition. An assessment performed on October 15, 2020 describes the following "current" conditions: anemia, atherosclerosis, foot ulcer secondary to diabetes mellitus, heart disease, hyperlipidemia, peripheral vascular disease, and type 2 diabetes mellitus with diabetic neuropathy.[30] Tillman has received intensive treatment for these conditions—particularly the diabetes and resulting complications. In May 2020, defendant underwent amputation to one of his left

---

28  R. Doc. 70-4 at 4.
29  *Id.*
30  R. Doc. 74-3 at 98.

6

toes and debridement to one of his right toes.[31] Following that surgery, Tillman was issued a wheelchair for mobility, and BOP officials noted that he requires assistance with dressing, grooming, laundry, and housekeeping tasks.[32]

His condition has not improved. On the contrary, it has become increasingly severe, and on January 18, 2021, plaintiff underwent additional surgery to treat an infection of his right foot.[33] The most recent medical record provided to the Court, dated February 1, 2021, reflects that defendant was transferred to a new hospital for treatment related to this surgery, and he received a provisional diagnosis of "[r]ight foot partial amputation."[34]

Even outside the context of the COVID-19 pandemic, Tillman's terminal medical condition is exactly the sort of "extraordinary and compelling" medical illness recognized by the Sentencing Commission. U.S.S.G. § 1B1.13, n. 1(A). Additionally, the Court notes that the Government concedes that defendant's medical conditions satisfy the "extraordinary and compelling" standard.[35] The Court finds that Tillman has shown that his medical condition is an extraordinary and compelling reason that warrants compassionate release.

---

[31]  R. Doc. 70-8 at 33.
[32]  R. Doc. 70-5 at 1.
[33]  *See* R. Doc. 74-3 at 9.
[34]  *Id.* at 1.
[35]  R. Doc. 70 at 15.

7

## C. Section 3553(a) Factors

Before granting a motion for compassionate release, the Court must consider the factors set out in 18 U.S.C. § 3553(a). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence, and the kinds of sentences available. *See* 18 U.S.C. § 3553(a)(1)-(7). The Government states that this case is "close call," but argues that the § 3553(a) factors weigh against compassionate release.[36] The Government contends that Tillman presents a high risk of recidivism, that Tillman is receiving competent medical care in prison, and that compassionate release would be inappropriate at this point given the length of time remaining on defendant's sentence.[37] The Court considers the § 3553(a) factors and the Government's arguments below.

Although the nature of the offense was serious—it involved a large quantity of cocaine hydrochloride—it was a non-violent drug offense. *Id.* at § 3553(a)(1). As to the defendant's "history and characteristics," the Court does not minimize Tillman's prior criminal history. Indeed, the pre-sentence investigation report ("PSR") shows that defendant has four prior convictions.[38] But the Court notes that, like this offense, those cases also involved non-violent drug charges.[39]

---

[36] R. Doc. 70 at 11.
[37] *Id.* at 15-18.
[38] R. Doc. 36 at 8-10, ¶¶ 26-29.
[39] *Id.*

8

The Government argues that defendant's history demonstrates an increasingly high-level of criminal activity, and therefore a high risk of recidivism.[40] The Court finds that Tillman's strong familial support system mitigates any risk of recidivism. *See United States v. Heitman*, No. 95-0160, 2020 WL 3163188, at *5 (N.D. Tex. June 12, 2020) ("[Defendant] appears to have a strong support system waiting for him, which mitigates any concerns of recidivism."). Tillman's release plan indicates that he will live with his mother in Houma, Louisiana,[41] and the PSR indicates that defendant has a strong relationship with his mother and the rest of his family.[42] The evidence that Tillman submitted also shows that he has used his time in prison to rehabilitate and better himself through educational programs and vocational training.[43] Moreover, the increasing severity and debilitating nature of Tillman's terminal medical condition make resuming active criminal behavior difficult, even if he were inclined to do so. Based on this evidence, the Court finds that the nature and circumstances of the offense, and defendant's history and characteristics, weigh in favor of compassionate release.

Granting Tillman's motion for compassionate release now would result in a 35% reduction to his sentence. The Government argues that such a reduction is

---

[40] R. Doc. 70 at 16.
[41] R. Doc. 68-2 at 10.
[42] R. Doc. 36 at 11-12, ¶¶ 36-46.
[43] R. Doc. 68 at 8.

9

counter to the purposes set out in § 3553(a).[44] Section 3553(a) requires that the sentence the Court imposes be "sufficient, but not greater than necessary" to satisfy several sentencing purposes. 18 U.S.C. § 3553(a). Specifically, the sentence must adequately reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with education, medical care, or other correctional treatment. *Id.* at § 3553(a)(2). The Court must also consider "the need to avoid unwarranted sentencing disparities" among similarly situated defendants. *Id.* at § 3553(a)(6). In light of the terminal nature of defendant's medical condition, and the difficulties of caring for himself in the environment of a corrective facility, the remaining term of imprisonment is greater than necessary to satisfy the sentencing purposes set out in § 3553(a). Conversely, a four-year term of supervised release would be sufficient to satisfy the needs set out in § 3553(a)(2). *See also id.* at § 3553(a)(3) (stating that the court shall consider "the kinds of sentences available"). For this reason, the Court finds that granting compassionate release now, after Tillman has served approximately 65% of his sentence in prison, is in accordance with the factors set out in § 3553(a).

Finally, the Court acknowledges that the BOP has provided frequent, competent medical treatment to Tillman. Nevertheless, because Tillman's condition has continued to deteriorate since he initially filed his motion for

---

44   R. Doc. 70 at 17.

compassionate release, and because of the difficulties Tillman is facing of caring for himself in prison, the Court finds that the need for medical treatment weighs in favor of granting the motion for compassionate release. *See* 18 U.S.C. § 3553(a)(2)(D).

### D. Danger to the Community

When ruling on a motion for compassionate release, the Court must assess whether the defendant is "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). In making this determination, the Court looks to 18 U.S.C. § 3142(g). *Id.* The factors set out in § 3142(g) are similar to § 3553(a), and include the "nature and circumstances of the offense" and the "the history and characteristics" of the defendant. *Id.* at § 3142(g)(1)-(4). As noted above, these factors weigh in favor of compassionate release. The Court finds particularly relevant the non-violent nature of this crime and all of defendant's previous offenses, defendant's strong family ties, and his terminal illness.

The Court notes that defendant's medical condition minimizes any physical threat that he poses to others. Defendant has limited mobility, and uses a wheelchair.[45] When the BOP denied Tillman's request, it noted that Tillman would rely on handicapped public transportation, or would need the assistance of another person to travel in the community.[46] Because of this physical incapacitation,

---

[45]   R. Doc. 70-5 at 1.
[46]   *Id.*

11

defendant is unlikely to cause physical harm to others. For these reasons, the Court finds that defendant is not a danger to others or the community.

### D. Government's Requests

The Government asks, if the Court grants Tillman's motion, that the Court modify the terms of defendant's supervised release to include a condition of home confinement.[47] The Court finds the requested modification unnecessary.

The Government also requests a 14-day quarantine period before release.[48] Because of the ongoing COVID-19 pandemic, the Court grants this request.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for compassionate release.

IT IS ORDERED that Tillman's sentence is REDUCED to time-served in prison, plus an additional, reasonable period of time to secure travel arrangements for Tillman and to allow for a 14-day quarantine period. The Court notes that Tillman should be released as soon as is safely practicable.

IT IS FURTHER ORDERED that the Bureau of Prisons release defendant for placement at his mother's residence in Houma, Louisiana. Upon release from imprisonment, Tillman will begin to serve the supervised release term of four years

---

[47] R. Doc. 70 at 19.
[48] *Id.* at 20.

12

that the Court imposed at sentencing. Tillman must comply with all the mandatory, standard, and special conditions that the Court imposed at sentencing.

New Orleans, Louisiana, this __16th__ day of February, 2021.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE